We'll move to the next case. Thank you. Tuckman v. JPMorgan Chase Bank. We have three lawyers to bring in for this one. Okay. Mr. Homer, I think you're going to begin this morning, right? Yes, Your Honor. Good morning, if it pleases the court. Judge Shelflight wrote some time ago in the IVAC's decision that a party can't avoid arbitration through artful pleading. Other courts have said the same thing. That's because the pro-arbitration policies that underlie the by like was done here. Well, here's my problem with your case. It seems to me that we've got two non-parties to the arbitration agreement who are trying to enforce an arbitration agreement against another non-party to the agreement. And I don't see how we can possibly allow that. So let's deal with it, first of all. As I started off with the idea with IVAC's, it says that you cannot avoid the impact of an arbitration provision by artful pleading. Unquestionably, if the lawsuit was brought by the entity itself, we wouldn't be having this kind of argument. And if you look at the agreement itself, in paragraph eight, section eight of that, it specifically incorporates by reference the remainder of it and the individual signatory, which would be the individual here, Mr. Tuckman, agreed to be bound by the terms of the depositor funding agreement and all of its terms, including that would be section 14, which is the embedded arbitration. Is he a party to the agreement? Is it an agreement he is making in his individual capacity? So section eight, he's a signatory, but section eight says that identifies him as being the depositor. And it says these signatories specifically agreed to the terms set forth in this section eight and all banking transactions outside. He's not signing on behalf of himself as an individual. He's signing on behalf of the entity, but he's identified as the signatory in there. And it describes that the signatory for the entity, not for himself. Well, but in the signatory, it defines in here about who the signatories are, and they identify the signatories assigned for each of them. And it describes Brad Tuckman, depositor. And so if you look at that language in there, it specifically gets there. Section eight pertains to the mechanics of banking. And then later in the agreement, it talks about that the obligations in the agreement are between the corporations, the signatories to those signatories to the agreement. Isn't that right? So your honor, I'm not sure I agree with that. The provision you read is specific to section eight, isn't it? That's correct. And then section B in there says that it's that it is applicable to all the provisions of this agreement. With respect to the mechanics of the banking relationship. I don't agree with that. I think it says all the provisions of this agreement, which would include section 14, which is the one that is that is where the arbitration provision is included. It's true, but on paragraph one, it lists the party as Bird Film Fund, LLC. And in the preamble, you define the term depositor as Bird Film Fund, LLC, not Brad Tuckman. Unquestionably so. But if you look in paragraph eight, where it defines who are the signatories, it defines Brad Tuckman on behalf of the depositor there. What about paragraph 14-D? What about paragraph 14-D where it makes clear that the agreement is binding only the corporate entities listed and not the individuals of those organizations? What it provides for there is limitations on remedies against and limits those to disputes between the entities itself. And in fact, we think that that argument actually assists us here, because what you have is an attempt by Mr. Tuckman to eviscerate a contractual provision that he agreed to. And it actually prohibits him from asserting the type of claim that he's attempted to do here in his individual capacity. Well, look at paragraph 15. The person signing on behalf of each of these parties represents that he or she has the right to execute the agreement on behalf of his respective party. Doesn't that cut against you that he's really signing it in his own name? Your Honor, we've never questioned the idea that there's a formation, and I don't think anybody questions the formation of an agreement here. But this also goes to the effect here, which is the questions of who would be bound by this based on the embedded arbitration provision and the rules under JAMS themselves, which are unique. They are not the ones which the AAA has. The JAMS rules specifically say that an arbitrator will decide who are the proper parties to the arbitration. And those are the rules which are actually engrafted in here. But there has to be an agreement to arbitrate before the arbitrator can decide that question. I agree with you. And that is one of the things which I think is a red herring here, which is there's unquestionably nobody's challenged the existence of this agreement or the embedded arbitration provision or its incorporation of the rules itself. Let's go back to Chief Judge Pryor's original question, which I'm not sure you answered. Do you have any case where a non-party to an arbitration agreement was able to force another non-party to arbitrate where neither was a successor in interest to a party to the agreement? Any case, any authority? Yes. The Giller versus Cafeteria of South Beach case, which is a supported DCA, third DCA case. The United Contractors case versus United Construction. And the Warren versus Tampa Mortgage Investors Company. The United Contractors case, that was a successor in interest case. And I said, set that aside. Right? Correct. And so was the Giller case. That's correct. But the defendant there was an officer of the signatory that was involved. So from our perspective, we believe that we get past this because there's no question here about a formation of the underlying agreement and the embedded arbitration provision. It is then, so we don't have to go through this two-step process, which opposing counsel has been articulating here that you go through. There is an agreement and there is an embedded arbitration provision which incorporates the rules. That then gets us over if we want to travel through that into the four bases that we've identified under common law, which is first, is that global stop and start there. They really, because there's been no substantive response to that whatsoever. On the face of the complaint, they have a theory that Chase and its employee Torres conspired with the people that Tuckman is claiming stole this company's money. And in bold black letters, they say that the fraudsters began to conspire with JP Morgan. First two counts of the complaint are RICO claims. And so we think that there's been no meaningful response whatsoever on that. And with that basis alone, there should be an order compelling arbitration. I see that my time is up. You've saved three minutes for rebuttal, Mr. Ventura. Good morning, may it please the court. Let me pick up where Mr. Homer left off with respect to the Giller case. And the takeaway from the Giller case is that the court there examined each side of the V. Can the defendant invoke equitable estoppel and can the plaintiff be bound by equitable estoppel to arbitrate? And that's exactly the math we have to do here. One plus one. If you take the defense side of the V, there's no question in this case that equitable estoppel would allow Mr. Torres and Chase to invoke the arbitration agreement. Mr. Tuckman doesn't even dispute that here. We meet both prongs of equitable estoppel. So then the question, and I think this is the question that the court is getting at is what about the plaintiff who is also a non-signatory? And here, the point that Mr. Homer was leading with is that we would not even be here with these questions if the proper party had sued. And the one question that Mr. Tuckman has never answered in this case, he did not answer it in the trial court below, and he hasn't answered it in his papers here, is given that everyone agrees that BFF, the corporation, is the one that suffered the injury, the one that paid the money, they did not have the money returned. Given all of that, why in the world is BFF not the plaintiff here? Well, that's a totally different question. But it's an important question because of where Mr. Homer started. Whether he's got a valid claim or not isn't the concern for us. It isn't a concern in the 11th Circuit because he may not artfully evade the arbitration agreement by the way he pleads his complaint. And that applies to both defendants and plaintiffs. That's a separate question, it seems to me. I appreciate that, but I think it's one that has to be answered because of the admonishment that parties may not evade an arbitration agreement by pleading a non-signatory either as a plaintiff or as a defendant. And that's precisely what he's done here to create the question that would never have to be asked if it had been pled the way it properly should have been. Okay. We're going to hear from Mr. Funes. Good morning, your honors. May it please the court. Your honors, you all got it. I'm just going to make a few points. First of all, in Giller, United Contractors, and Tampa Mortgage, the person on which equitable estoppel was applied was either an assignee or an successor in interest. All of those cases, so there's only one case that is clearly on point and we filed it last week. Those are parties who come to, because of a legal relationship or privity, come to stand in the shoes of a signatory. Exactly, your honor. And then last week, as we were preparing for our argument, we found the case of Green v. Johnson, which is 276 S.O. 3D 527. And on page 531, the third DCA specifically held that it could not compel a non-signatory to arbitrate. I just said, look, if you apply equitable estoppel under Florida law, it just does not fit into the situation. They also say that we do not contest equitable estoppel. Of course, we cited Green v. Johnson, but we also cited Marcus v. Florida Bagels, where the fourth DCA said, look, when the signatories to an arbitration agreement actually litigate their dispute, a non-signatory can't come in and try to force one of those signatories to arbitrate. And the facts here, they're completely uncontested. That's exactly what happened here. Byrd Film Fund sued the fraudsters, Weathervane and Forrest Capital in state court. There's a consent judgment. And so it is not inequitable or inconsistent for Brad Tuchman, even if he is Byrd Film Fund for whatever reason, to sue here. The only other thing I would say, Your Honors, is they keep mentioning the IVAX case. IVAX is precedent from this court, but it came before Carlisle in which the Supreme Court said for these issues, state court or state law applies. In fact, in Lawson v. Life of South Insurance Company, this court specifically said, look, we need to be very careful about our federal law applies. IVAX was attempting to apply federal law. And in fact, IVAX doesn't even hold what they're saying. It was just per dicta. In that opinion, the 11th Circuit held that there was no artful pleading around arbitration. So unless there are any questions, Your Honors, we respectfully request that you affirm the district court's order. Thank you. Mr. Funes, are you relying on the contract itself in this case to get to your $1.87 million in the contract? No, not at all, Your Honor. I mean, look, the elements for fraud in Florida, and there is no dispute that this is a Ponzi scheme. The U.S. Attorney's Office has indicted Benjamin McConnelly and Jason Van Emen and a Wells Fargo employee, Benjamin Raphael, for doing this Ponzi scheme. So there's no question about that. And the elements for fraud are, is there material misrepresentation? Did the person intend to materially misrepresent the fact? Did the victim fall for that misrepresentation? And was the victim injured? And here, you know, as Judge Pires said, Chief Judge Pires said, that's a different issue. We think we pleaded that perfectly well. There is no issue or question that the money came from Mr. Tuchman personally. And in fact, even if there was an issue, you could just look at the U.S. Attorney's indictment, which lists Mr. Brad Tuchman as a victim of this Ponzi scheme. Of course, whether the complaint is valid is a separate question from whether there should be enforcement by a federal court of an arbitration agreement by a non-party against the non-party. Absolutely, Your Honor. Or whether there's some affirmative defense for set off or whatever they want to raise, but a completely different issue. Thank you, judges. Any other you've got a few minutes. Thank you, Your Honor. So the question that the judge self asked, I think is, is answerable like that. But let me, let me jump to something else first, which is what counsel wants the court to ignore here is what section 605.0110 says. That's a Florida statute that we cited, and that deals with limited liability companies. And it says that when money goes into the LLC, it's not the property of the individual. It's the property of the LLC. So it's another example of attempt to plead around this in such a way. It's the same money that they're complaining about here and how they're going to try to argue in the face of that statute that this is not a claim by the entity and it's not the entity's money here is further evidence of their maybe that that may be why you win. But that may be why the complaint fails. But it has nothing to do with whether, you know, we can require the enforcement of an arbitration agreement from by one non-party against another. Again, as Mr. Vanzura said, the only reason we're in this and that we're having this debate is because of their attempt to plead around the provision. The courts have recognized that that's an impermissible action to do that. It's not a defense that operates as it's not like it's an affirmative defense where you say this fails to state a claim because he's trying to plead around an arbitration agreement. You know, if you've got two parties to an arbitration agreement, I get it. They have to arbitrate their dispute. If your argument is, look, it really this is the wrong party suing. Well, that's an argument about the merits. That's not an argument about the arbitration agreement. We think that, you know, what the court has said because of the pro arbitration policies, the courts are required to look behind the substance of what the allegations are and the assertions that are being made here. And when you do that, it's apparent that what is done here is an attempt to eviscerate and avoid the arbitration provision. And what Joe Flatt said in that opinion is that's an impermissible attempt to do that. We don't need to get to any of the common law basis. It's one of the type of analysis that the courts can do. And if you allow that kind of behavior to go on, you're going to have people engaging in exactly these types of things to eviscerate arbitration provisions. So, Your Honor, you know, we've laid out our position on this. I think after Carlisle, it's quite clear that arbitration provisions can be enforced against parties who are not parties to it, as well as, you know, situations who are seeking to enforce it, who are signatory or who are not a signatory. And we think under those circumstances, for the reasons we laid out that the arbitration provision here should be enforced. Okay, thank you, Mr. Ventura. You've got two minutes. Thank you. I'll pick up on Judge Self's question. And I think that goes to the first prong of equitable estoppel. And there's an independent prong of equitable estoppel in which the plaintiff alleges substantially interdependent or concerted misconduct between the non-signatory and the signatories. And here, Mr. Tuchman does not dispute that his complaint, and he cannot dispute, frankly, that his complaint alleges such. As a result, I think there's no question that equitable estoppel would permit Mr. Torres and Chase to invoke the arbitration provision here. And then when we switch again, as they did in Giller, to the other side of the V, to answer the panel's question regarding Mr. Tuchman, there are also principles that were espoused in our papers, including alter ego liability and judicial estoppel that may apply here. And this again goes to the question that when Mr. Tuchman concedes that he ignored the corporate form and contributed the $1.85 million at issue, he has thus struck the alter ego prong. It would also allow us to invoke it. The last point that I'll make, and I understand the panel's concern and question about this, but I think it's important, the point that Mr. Homer made, in every instance where you have an LLC like this one that is controlled by one individual, that LLC could avoid an arbitration provision simply by using its principle to sue in his personal name. And it is a question of arbitration, because the ultimate question here is whether these parties agree to and are bound to arbitrate. And there's really no question that Mr. Tuchman did do that. He did that on behalf of the LLC that he controls, and now he's trying to avoid that agreement by simply naming himself. It's not just a defense to the case, but the question is whether we should be in arbitration in the first place. And the answer is yes, because Mr. Tuchman cannot do what every other LLC member or manager could do if this were permitted to continue. I think we understand your case. Thank you for your argument. We're going to move to the next one.